IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

ROBERT SHIFLET                                              PETITIONER

v.                    NO. 2:22-cv-00161-BSM-PSH

JOHN P. YATES                                               RESPONDENT


FINDINGS AND RECOMMENDATION

INSTRUCTIONS

The following proposed Recommendation has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

In this case, filed pursuant to 28 U.S.C. 2241, petitioner Robert Shiflet ("Shiflet") maintains that the Bureau of Prisons ("BOP") has failed to apply his First Step Act earned time credits ("FSA credits"). It is recommended that the case be dismissed without prejudice because he failed to exhaust his administrative remedies before filing it.

The record reflects that Shiflet pleaded guilty in the United States District Court for the Eastern District of Arkansas to transportation of a minor to engage in criminal sexual activity. On June 22, 2021, Shiflet was sentenced to thirty-three months' imprisonment, a term of imprisonment to be followed by a lifetime of supervised release. His projected release date is February 27, 2023, or less than three weeks away.

Shiflet began this case by filing a petition pursuant to 28 U.S.C. 2241. In the petition, he maintained that the BOP has failed to apply the FSA credits he acquired as a result of his participation in BOP programming. He asked that the BOP be ordered to apply the FSA credits he has acquired and release him to begin serving his supervised release.[1]

---

[1] Shiflet represented that he has earned 598 days of FSA credits, thus entitling him to 299 days off his sentence and supervised release. He asked that he be given credit for the 299 days, which would make him immediately eligible to begin serving his supervised release, and any unused credit be applied to his supervised release.

Shiflet acknowledged that he did not exhaust his administrative remedies before filing this case. He maintained that his failure to do so, though, should be excused for two reasons. First, a petitioner need not exhaust his remedies "in habeas motions for First Step Act credit." See Docket Entry 1 at CM/ECF 2. Second, it would be futile to require Shiflet to exhaust his remedies as his projected release date is February 27, 2023.

Yates thereafter filed the pending motion to dismiss and asked that the case be dismissed because Shiflet failed to exhaust his administrative remedies before filing the case. See Docket Entry 6. Yates supported the motion by noting, inter alia, that "[c]ourts, including at least one in this district, have applied the exhaustion requirement in dismissing cases involving requests for programming credit under the First Step Act." See Docket Entry 6 at CM/ECF 2 (citing, among other cases, Orasco v. Yates, No. 2:22-cv-00156-BSM-ERE, 2002 WL 18027627 (E.D. Ark. Dec. 12, 2022), report and recommendation adopted, No. 2:22-cv-00156-BSM, 2022 WL 18027631 (E.D. Ark. Dec. 30, 2022). Yates additionally noted that Shiflet's failure to exhaust brought about the lack of an administrative record and prevented Yates from addressing Shiflet's claims on the merits.[2]

---

[2] Shiflet was accorded an opportunity to file a response to Yates' motion to dismiss, but Shiflet failed to do so.

In Orasco v. Yates, United States District Judge Brian S. Miller outlined the FSA earned time credit program and the requirement that a petitioner exhaust his administrative remedies before challenging the BOP's application of those credits. Judge Miller did so as follows:

> The ETC program, enacted under the FSA, employs an incentive-based approach to reduce recidivism and assist prisoners in the reintegration process, which occurs at the latter stages of a federal sentence. [Footnote omitted]. Under the program, eligible prisoners can earn up to 15 days of ETCs for every thirty days of successful participation in evidence-based, recidivism reduction programming and activities. 18 U.S.C. 3632(d)(4)(A)(i)-(ii). Section 3632(d)(4)(C) provides that a prisoner's ETCs are applied toward time in prerelease custody or supervised release: "The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." Section 3624(g), in turn, defines "prelease custody" as placement in home confinement or a residential reentry center, 18 U.S.C. 3624(g)(1)(A), (g)(2), and if a prisoner's sentence includes a term of supervised release, 3624(g) states that the BOP may "transfer the prisoner to begin any such term of supervised release at an *earlier* date, not to exceed 12 months, based on the application of [the earned] time credits...." 18 U.S.C. § 3624(g)(3) (emphasis added).
>
> ...
>
> A federal inmate must normally exhaust his administrative remedies before seeking habeas relief under 2241. Willis v. Ciccone, 506 F.2d 1011, 1015 (8th Cir. 1974). Although this judicially created exhaustion requirement is not mandated by statute or a jurisdictional prerequisite, see Lueth v. Beach, 498 F.3d 795, 797 n.3 (8th Cir. 2007), it is designed to serve several purposes including:

> (1) the development of the necessary factual background upon which the claim is based; (2) the exercise of administrative expertise and discretionary authority often necessary for the resolution of the dispute; (3) the autonomy of the prison administration; and (4) judicial efficiency from the settlement of disputes at the prison level.

Mason v. Ciccone, 531 F.2d 867, 870 (8th Cir. 1976) (citing McKart v. United States, 395 U.S. 185, 194-195 (1969)).

> The BOP has a four-step administrative process for resolving inmate grievances: (1) an attempt at informal resolution with prison staff; (2) submission of a formal grievance to the Warden, on form BP-9, delivered to the institution staff member designated to it; (3) an appeal of an unfavorable Warden's decision to the appropriate Regional Director, on form BP-10; and (4) an appeal of an unfavorable Regional Director's decision to the General Counsel, on form BP-11. See 28 C.F.R. 542.13–542.18. Proper exhaustion of administrative remedies "'means using all steps that the agency holds out and doing so properly (so that the agency addresses the issues on the merits).'" Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).

See Orasco v. Yates, 2022 WL 18027627, 2–3, report and recommendation adopted, 2022 WL 18027631.

Here, Shiflet acknowledges that he did not exhaust his administrative remedies before filing this case. Unlike the petitioner in Orasco v. Yates who at least made a minimal effort to exhaust, Shiflet appears to have done nothing. The undersigned knows of no support for the proposition that

5

a petitioner need not exhaust his remedies before challenging the application of FSA credits, and, in fact, Judge Miller found in <u>Orasco v. Yates</u> that exhaustion was indeed required in such an instance. The only question is whether requiring Shiflet to do so at this point would be futile.

The exhaustion requirement may be excused if the petitioner can show that requiring him to exhaust his administrative remedies would be futile. <u>See</u> <u>Lueth v. Beach</u>, 498 F.3d 795 (8th Cir. 2007). For instance, in <u>Tensley v. Outlaw</u>, No. 2:10-cv-00014-BD, 2010 WL 2671782 (E.D. Ark. July 2, 2010), United States Magistrate Judge Beth Deere excused a petitioner's failure to exhaust because he was near the conclusion of his sentence and initiating the grievance procedure at that point in his sentence would have been futile.

The undersigned finds that requiring Shiflet to exhaust his administrative remedies at this point would be futile as his projected release date is less than three weeks away. There is no circumstance under which he could complete the administrative review process in less than three weeks. It does not follow, though, that the claims he raises in the case at bar should therefore be considered on the merits. Instead, Yates' motion to dismiss should be granted, and this case dismissed without prejudice, for at least two reasons.

First, when Shiflet had the opportunity to timely initiate the administrative review process, there is no evidence he did anything. He simply waited until September 14, 2022, to file the case at bar. If there is fault to be assigned for this predicament—the undersigned being asked to review the application of FSA credits for a petitioner who is less than three weeks away from his projected release date—the fault lies with Shiflet.

Second, by failing to timely initiate the administrative review process, Shiflet prevented the development of an administrative record. The lack of such a record prevented Yates from addressing Shiflet's claims on the merits and prevents the undersigned from doing so now. The undersigned could not review Shiflet's claims on the merits at this point, even if the undersigned were inclined to do so.

Shiflet appears to maintain that notwithstanding the foregoing, this case should move forward because his FSA credits, if they have indeed been withheld, can be applied toward his supervised release. Although there is some support for the proposition that FSA credits can be applied toward a petitioner's supervised release, see Dyer v. Fulgam, No. 1:21-cv-299-CLC, 2022 WL 1598249 (E.D. Tenn. May 20, 2022), the authority is unpersuasive and should not be followed. Once Shiflet begins serving his supervised release, he is no longer in BOP custody, and the relief he seeks can no

longer be granted. See Pillow v. Bureau of Prisons, No. 4:22-cv-00713-PSH, 2022 WL 13892877 (E.D. Ark. Oct. 21, 2022). See also Zimmer v. Marske, No. 21-cv-284-JDP, 2022 WL 4016623 (W.D. Wis. Sept. 2, 2022) (court cannot use withheld FSA credits to reduce supervised release retroactively). In any event, Shiflet will be serving a lifetime of supervised release. Even were the undersigned to order Shiflet's FSA credits be applied toward his supervised release, it would make absolutely no difference in the length of his supervised release.[3]

Given the foregoing, it is recommended that Yates' motion to dismiss be granted. See Docket Entry 6. This case should be dismissed without prejudice. All requested relief should be denied, and judgment should be entered for Yates.

---

[3] The undersigned makes note of Pillow v. Bureau of Prisons, No. 4:22-cv-00713-PSH, 2022 WL 13892877 (E.D. Ark. Oct. 21, 2022). There, Pillow challenged the manner in which the BOP was applying his FSA credits as a result of a September 8, 2022, memorandum, a memorandum which provided the following: "Eligible inmates will continue to earn FTC toward early release until they have accumulate 365 days OR are 18 months from their release date, whichever happens first. At this point, the release date becomes fixed, and all additional FTCs are applied toward RRC/HC placement." See Id. at 4. The BOP moved to dismiss the case on the ground that Pillow failed to exhaust his administrative remedies and, alternatively, on the ground that his claims were without merit. The undersigned excused Pillow's failure to exhaust because he was on home confinement and within approximately two weeks of his projected release date. The undersigned found that the BOP had abused its discretion in applying the credits to his sentence and granted relief in that one respect. Here, although Shiflet noted the "eighteen month" policy in a "Notice to the Court," see Docket Entry 2, he did not challenge the manner in which the BOP was applying his FSA credits as a result of the policy. Moreover, Yates did not address the merits of Shiflet's claims in filing the motion to dismiss.

SO RECOMMENDED this 9th day of February, 2023.

_____
UNITED STATES MAGISTRATE JUDGE